UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Muertos Roasters, LLC, | No. 2:22-cv-00051-KJM-KJN |
| Plaintiff, | ORDER |
| v. | |
| Luke Schneider, et al., | |
| Defendants. | |

Plaintiff Muertos Roasters, LLC, a California-based coffee company, brought this seven-claim trademark infringement lawsuit against defendants Fire Department Coffee, Inc. and its co-founders, Luke Schneider and Lawrence Walton, in their personal capacities. *See generally* Compl., ECF No. 1. All defendants are based in Illinois. *See id.* ¶¶ 31–33. Plaintiff alleges defendants are marketing and selling coffee using plaintiff's trademarks in an attempt "to exploit plaintiff's goodwill and reputation" and confuse the "consuming public." *Id.* ¶¶ 12, 14. The trademarks at issue involve, as plaintiff puts it, a "unique and distinct trade dress comprising a novel amalgam of the traditional *Dia de los Muertos* artwork and motif with classic firefighter symbols such as the red fireman's hat." *Id.* ¶ 4.

Defendants move to dismiss under Rule 12(b)(6), arguing plaintiff does not own the subject trademarks. *See* ECF No. 13. Defendant Schneider also moves to dismiss under Rule 12(b)(2), arguing this court lacks personal jurisdiction over him. *See* ECF No. 14-4. Schneider

1

alternatively asks the court to transfer this case to the Northern District of Illinois. *See id.* at 9. Plaintiff filed untimely oppositions to both motions, *see* ECF Nos. 20 & 21, and defendants replied, *see* ECF Nos. 23 & 24. As explained below, the court **grants** both motions.

I.  **RULE 12(B)(6) MOTION TO DISMISS**

Plaintiff's lawsuit is premised on its owning the subject trademarks. *See generally* Compl. But, as defendants note, "each and every [United States Patent and Trademark Office] trademark registration and application asserted as the basis for [plaintiff's] claims" is owned by a different company: Cup Half Full Holdings, Inc. (CHFH). *See* Mot. Dismiss at 2; *see also* Pfeiffer Decl. Exs. 1–10, ECF No. 13-2 (attaching public records from the USPTO showing CHFH owns all of the subject trademarks and applications). The court takes judicial notice of these public records. *See Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 641 n.3 (9th Cir. 1993) (taking judicial notice of trademark registrations issued by the USPTO because their "accuracy cannot reasonably be questioned"); *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146–47 (N.D. Cal. 2020) ("Materials in the online files of the USPTO and other matters of public record are proper subjects of judicial notice." (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006))). The public records also are incorporated by reference in the complaint. *See* Compl. ¶¶ 6–7.

In its opposition, plaintiff submits the declaration of Joshua Held, the chairman of both CHFH and Muertos Roasters. *See* Held Decl. ¶¶ 2–3, ECF No. 20-1. Mr. Held explains that Muertos Roasters is a wholly owned subsidiary of CHFH and that CHFH "transferred and assigned" the subject trademarks "and the associated goodwill" to Muertos Roasters before Muertos Roasters filed this lawsuit. *Id.* ¶¶ 4, 7. Mr. Held attaches the trademark assignment agreement to his declaration, *see* Held Decl. Ex A, but he does not suggest the assignment agreement has been recorded with the USPTO.

The court grants defendants' motion to dismiss. Judicially noticeable USPTO records contradict plaintiff's alleged ownership of the subject trademarks and applications, and the court is not required to "accept as true allegations that contradict matters properly subject to judicial notice." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Moreover, the

unrecorded assignment agreement on which plaintiff relies to prove ownership is not properly before the court: It is not subject to judicial notice under Federal Rule of Evidence 201, and plaintiff does not attach it to the complaint or even mention in the complaint that it owns the trademarks by way of assignment. To the contrary, plaintiff alleges "Plaintiff Muertos Roasters has applied for and received several federal registrations" for the subject trademarks. Compl. ¶ 6.

## II.     RULE 12(B)(2) MOTION TO DISMISS

A party may seek dismissal of a claim for lack of personal jurisdiction under Rule 12(b)(2). The burden of establishing personal jurisdiction rests with the plaintiff. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). If the court decides a Rule 12(b)(2) motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of the facts supporting personal jurisdiction. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006). In deciding whether plaintiff has made a prima facie showing, a court need only consider the pleadings and any submitted affidavits. *Boschetto*, 539 F.3d at 1015. Uncontroverted factual allegations generally must be taken as true, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004), but "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden," *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (citations omitted).

Schneider moves to dismiss under Rule 12(b)(2), arguing he is not subject to personal jurisdiction in California because he has practically no contacts with California. *See* Mot. Dismiss at 2–3, ECF No. 14; Schneider Decl. ¶¶ 6–13. Plaintiff submitted a three-page opposition; it did not submit any evidence in response to Schneider's motion, relying instead on the bare allegations of its complaint.

Plaintiff's complaint has two core flaws. First, plaintiff's allegations are mostly against defendants generally. *See, e.g.*, Compl. ¶ 14 ("*Defendants'* prominent unauthorized use of Plaintiff's federally registered trademark in the title of *Defendants'* Internet advertisements is a flagrant and unlawful attempt to exploit Plaintiff's goodwill and reputation . . . .") (emphasis added). Plaintiff may not aggregate factual allegations concerning multiple defendants in order to

3

demonstrate personal jurisdiction over any individual defendant. *See Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980) (rejecting aggregation of co-defendants' forum contacts in determining personal jurisdiction as "plainly unconstitutional" because "the requirements of *International Shoe* must be met as to each defendant over whom a . . . court exercises jurisdiction"); *Calder v. Jones*, 465 U.S. 783, 790 (1984) (defendant's "contacts with California are not to be judged according to their employer's activities there. . . . Each defendant's contacts with the forum State must be assessed individually.").

Second, the two paragraphs in the complaint that do single out Schneider's alleged wrongdoing assert mere legal conclusions. Plaintiff alleges:

> . . . Defendant Schneider and Defendant Walton personally participated in the decisions to intentionally engage in the pervasive infringing behavior and to intentionally misappropriate the Muertos Roasters' Trademarks and the Muertos Roasters' Trade Dress, and therefore are personally liable for such actions and decisions.
>
> This Court has personal jurisdiction over Defendant Schneider and Defendant Walton because, inter alia, Defendant Schneider and Defendant Walton actively took part in the decisions to engage in infringing and unlawful business practices in the State of California, and purposefully directed their unlawful behavior at a California company, Plaintiff Muertos Roasters, with full knowledge that Plaintiff Muertos Roasters was a California based company and the harm would be suffered in the State of California and the Eastern District of California.

Compl. ¶¶ 25, 38. These conclusory allegations trace *Calder's* three-part "effects" test.[1] And although Schneider does not directly challenge these allegations, the court is only required to accept uncontroverted allegations as true "to the extent they assert facts rather than legal conclusions." *Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1116 (S.D. Cal. 2021) (citations omitted); *Swartz*, 476 F.3d at 766.

/////

---

[1] This test requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (internal quotation marks omitted).

Moreover, even if the court accepted plaintiff's allegations as true, plaintiff would still fall short of meeting its burden at this stage. *See Whiteslate, LLP v. Dahlin*, No. 20-1782, 2021 WL 2826088, at *4 (S.D. Cal. July 7, 2021) ("Corporate officers must generally be the guiding spirit and the active directing hand in full charge of [the corporation's] operations in order to be subject to personal jurisdiction." (internal quotation marks and citation omitted)); *Calder*, 465 U.S. at 790 (employees not shielded from personal jurisdiction if they were "primary participants in an alleged wrongdoing intentionally directed at" the forum state). Plaintiff's conclusory allegations that Schneider "personally participated" and "actively took part" in the decisions to engage in infringing behavior fall short of suggesting he was a "primary participant" or "guiding spirit" in any wrongdoing.

Plaintiff's complaint is similar to the complaint in *Whiteslate*, in which the Southern District of California found it lacked personal jurisdiction over a defendant named Smith in his personal capacity:

> Plaintiff allege[d] no facts that render Defendant Smith a "guiding spirit" of any of the alleged claims or corporate operations. Plaintiff only references Smith when (1) identifying him as a resident of San Diego County (Compl. ¶ 5), identifying his role as Chief Financial Officer and Secretary of ClickUp (*Id.* ¶ 62), and when merely asserting legal conclusions without factual analyses (e.g., "Defendant[ ] Smith ... personally participated in the wrongful conduct of infringing on Slate's copyrighted contracts and work-product"). (*Id.* ¶ 127.)

2021 WL 2826088 at *4.

In sum, plaintiff has not met its burden of establishing personal jurisdiction is proper here. As in *Whiteslate*, plaintiff's complaint alleges only legal conclusions; it neither alleges nor shows Schneider played any specific role in Fire Department Coffee's alleged wrongdoing. Courts have found personal jurisdiction absent when presented with much more. *See, e.g.*, *Ind. Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743 (C.D. Cal. 1995) (finding jurisdiction over out-of-state company but rejecting jurisdiction over company's president in personal capacity despite his admitting to authorizing publication of subject advertisements with contested trademark in national magazines he knew were distributed in California; noting president did not

develop advertising campaign using trademarked phrase and was only one of three people who collectively made decision to use advertisement).

### III. CONCLUSION

The court **grants** defendants' 12(b)(6) motion to dismiss and **grants** defendant Schneider's 12(b)(2) motion to dismiss; both motions are granted with leave to amend given that amendment to cure the pleadings does not appear futile. Fed. R. Civ. P. 15. The court does not reach Schneider's alternative request to transfer this case to the Northern District of Illinois.

This order resolves ECF Nos. 13 & 14.

IT IS SO ORDERED.

DATED: August 29, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE